IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>STEVE EARL PERRY, JR.,<br><br>Defendant. | Case No. 24-CR-00284-SEH |

## OPINION AND ORDER

Before the Court is Defendant Steve Perry Jr.'s motion to suppress evidence. [ECF No. 26]. The Court has set an evidentiary hearing on the motion for November 12, 2024. [ECF No. 39]. However, after reviewing the record, which includes body camera footage of officers involved in an encounter with Perry [ECF Nos. 27, 33], the Court finds it has sufficient information to rule on the motion without an evidentiary hearing. For the reasons provided below, the motion is denied.

**I. Background/Procedural History**

Around 1:30 a.m. on May 5, 2024, Tulsa Police Officers Isaac Marquez and Michael Terwilliger drove through a parking lot in downtown Tulsa and saw a group of men standing near a parked Buick sedan. [ECF Nos. 26, 31 at 2]. When Perry saw the officers drive by, he ducked toward the Buick. [*Id.*].

Marquez and Terwilliger parked their patrol unit nearby and approached the group on foot. [*Id.*]. As the officers approached, Perry stood several feet from the trunk of the Buick. [ECF No. 31 at 2]. Marquez told Perry that there was a "no trespass letter on file in this parking lot," and explained "that means y'all can't hang out, okay? Y'all either gotta be comin' or goin'." [ECF No. 27 at 00:36–00:43]. Perry replied "Okay," gave a thumbs up, and walked to a nearby car. [*Id.*]. Marquez added "we've had a lot of problems in these parking lots, a lot of fights." [*Id.* at 00:44–00:47].

While Marquez spoke to Perry, Terwilliger shined a flashlight into the windows of the Buick and saw a firearm on the rear driver's side floorboard. [ECF No. 26 at 2; ECF No. 31 at 3]. He told Marquez to "hold onto him," pointing at Perry. [ECF No. 27 at 00:48–00:50]. The officers detained Perry and another individual, placing them in handcuffs and patting them down for weapons. [*Id.* at 00:51–01:45]. After obtaining Perry's driver's license, the officers ran background checks on him and two others and checked the serial numbers of two firearms found inside the Buick. [ECF No. 31 at 3]. Officers seized one firearm because it had been reported stolen but returned the other to the person who claimed it. [*Id.*]. The officers made no arrests, and Perry was released approximately twenty minutes after being detained. [ECF No. 33 at Exhibit 2 at 22:00–22:50].

A federal grand jury charged Perry with escape from federal custody, in violation of 18 U.S.C. §§ 751(a) and 4082(a). [ECF No. 18]. Perry now moves to suppress his "seizure … the seizure of any other individuals at the scene; and … any and all statements from the stop, seizure and search." [ECF No. 26 at 1]. He argues that the officers who detained him lacked reasonable suspicion of criminal activity and therefore his "stop, seizure, and search" violated the Fourth Amendment. [*Id*. at 4–8]. He further challenges the seizure of the firearms, arguing that the plain view doctrine does not apply because the incriminating nature of the firearm in the back seat of the Buick was not immediately apparent. [*Id*. at 8–11].

The government responds that the only evidence it seeks to introduce at trial is the officers' identification of Perry through their testimony and body camera footage that establishes Perry's presence in the parking lot. [ECF No. 31 at 1–3, 11]. The government argues that this evidence falls outside the scope of Perry's motion, which seeks to suppress evidence of Perry's "stop, seizure, and search." [*Id*. at 1]. The government claims that Perry's Fourth Amendment rights were not implicated during the initial encounter because it was consensual. [*Id*. at 4–5]. Although the government states that it "does not seek to introduce evidence from the ensuing investigative detention," it nonetheless argues that Perry's detention was supported by reasonable and

articulable suspicion of criminal activity and that the officers had probable cause to search the Buick. [*Id.* at 5–11].

## II. Analysis

"Interactions between police and citizens generally fall into one of several categories: consensual encounters, investigative stops, and arrests." *United States v. Young*, 99 F.4th 1136, 1143 (10th Cir. 2023) (citation and internal quotation marks omitted). "Consensual encounters are not seizures within the meaning of the Fourth Amendment." *Id.*

To determine whether an encounter was consensual, courts must "consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' request or otherwise terminate the encounter." *United States v. Woody*, 45 F.4th 1166, 1173 (10th Cir. 2022) (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)) (internal quotation marks omitted). The Tenth Circuit has developed a non-exhaustive list of factors to consider in determining whether an encounter was consensual:

> [(1)] the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers;
>
> [(2)] whether the officers touch or physically restrain the defendant;
>
> [(3)] whether the officers are uniformed or in plain clothes;
>
> [(4)] whether their weapons are displayed;

4

>[(5)] the number, demeanor and tone of voice of the officers;
>
>[(6)] whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and
>
>[(7)] whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*Id.* at 1174 (citations omitted). Although no single factor is dispositive, the presence of two or three "may be sufficient to support the conclusion that a seizure occurred." *Id.*

Here, the uniformed officers approached Perry while he was in an open parking lot with many pedestrians walking around. During the initial encounter (before Perry was placed in handcuffs), no officer touched or physically restrained Perry; nor had Perry provided officers his driver's license. Although multiple officers were at the scene, their demeanor and tone of voice remained pleasant, and the officers did not display their weapons. All these factors weigh in favor of finding a consensual encounter.

Although the officers did not specifically inform Perry that he had a right to terminate the encounter, Marquez told Perry that he had to "be comin' or goin'" and could not "hang out." The Court finds these statements sufficient to have informed Perry that he was free to terminate the encounter and effectively encouraged him to do so. Therefore, the Court concludes that the

5

initial encounter between Perry and the officers was consensual and thus did not implicate Perry's Fourth Amendment rights.

Perry's detention occurred after the brief initial encounter. The government states that it "will not offer evidence that Perry was briefly detained and handcuffed, or that officers found two firearms in the Buick." [ECF No. 31 at 1]. For the sake of clarity, the Court finds that Perry's seizure began when Terwilliger told Marquez to "hold onto him," pointing at Perry. [ECF No. 27 at 00:48–00:50]. Therefore, the government is prohibited from introducing body camera footage from either officer that includes the "hold onto him" statement or depicts events subsequent to that statement. Because the government does not intend to introduce the evidence Perry seeks to suppress, namely, evidence of his "stop, seizure, and search," the Court finds that Perry's motion is moot.

## III. Conclusion

For the reasons stated above, the Court concludes that the evidence the government intends to introduce at trial is limited to the officers' initial contact with Perry, which was a consensual encounter that did not implicate his Fourth Amendment rights. Based on this finding, the Court need not address whether any evidence derived from Perry's seizure should be suppressed.

IT IS THEREFORE ORDERED that the evidentiary hearing set for November 12, 2024 is STRICKEN and Defendant's motion to suppress [ECF No. 26] is DENIED as moot.

DATED this 31st day of October, 2024.

_Sara Hill_
Sara E. Hill
UNITED STATES DISTRICT JUDGE